THE STATE v. MALOY.

1. **Instructions**: TO BE CONSIDERED TOGETHER. Instructions must be considered together and an omission to fully state the law in one instruction, when the omission is fully supplied in another, does not constitute error.

2. **Criminal Law**: SELF DEFENSE. Upon the trial of one indicted for murder, wherein the justification was self defense, the following instruction was held to be correct:

   "While defendant had the right to interfere and resist a felonious assault being made upon said B., if such an one was being made, even to the taking of life, still this would be no justification whatever for an assault subsequently made upon the deceased by defendant, if you find there was one. Therefore, if you find established by the evidence that the defendant interposed in an affray between the deceased and the said B., and prevented a threatened injury to the person of said B. by S., if such was the case, such fact having been accomplished, it was the duty of defendant to have ceased from further interference with deceased, save he might have lawfully arrested the said S., informing him of such fact, and might have disarmed him, if he was armed, using reasonable and proper force therefor; but for this purpose he had no right to take the life of deceased, and if he did, such killing was unlawful and defendant is guilty of murder in the second degree, or manslaughter, as you may find the case to be under the instructions heretofore given you."

3. ———: ———: RETREAT. If, in an altercation between two persons, one of whom is armed with a club, the other succeeds in wresting the club from him, whereupon the latter retreats, the former is justified in pursuing him, if he believes the latter is going for a dangerous weapon and that he cannot reasonably get out of the way, and he may be justified in taking life; but if he could retreat with safety, without resorting to the slaying of his adversary, then the killing is not justifiable.

4. ———: ———. Before one would be justified in pursuing another and taking his life on the ground of self defense, he should at least stand his ground until he sees whether there is a reasonable apprehension of danger.

5. ———: AIDING AND ABETTING: PRESENCE. The presence of one at a place where a crime is committed is not alone sufficient to justify the conclusion that he assented to its commission, and his assent must be established before he can be convicted of aiding and abetting; his presence is, however, a circumstance to be considered in determining whether or not he was guilty of aiding and abetting.

6. ———: ———: WHAT CONSTITUTES. To be guilty of aiding and abetting, one need not have assisted in the particular act of criminal violence, but it is sufficient if he was acting in general concert with the principal in the commission of an unlawful act.

7. ———: THREATS. Evidence that the deceased had made threats against the defendant shortly before the assault is not competent, unless it appear that they were brought to the knowledge of the latter.

8. **Evidence:** REPORTER'S NOTES. The reporter's notes alone are competent evidence of testimony given upon a former trial, until a satisfactory showing be made why they are not produced.

### *Appeal from Jefferson District Court.*

### THURSDAY, SEPTEMBER 21.

THE defendant and John Chancey were indicted for killing John Shea in Wapello county, on the 13th day of August, 1874, and charged with the crime of murder in the second degree. Verdict of guilty, judgment, and defendant appeals.

*Stiles & Burton*, for appellant.

*M. E. Cutts*, Attorney General, for the State.

SEEVERS, CH. J.—The undisputed facts are: The defendant and Chancey, Brady and others were in Williams' saloon on the night of the homicide. Brady, being noisy and intoxicated, was requested to leave the house, which he did, and the others followed him. Very shortly thereafter, the deceased and Brady got into an altercation on the street. The deceased charged that Brady had broken his windows and insulted some women, which Brady denied. The deceased took hold of Brady, who was fifty-seven years old, and endeavored to pull him along the street for the avowed purpose of showing him the broken windows. There was quite a crowd around, among whom were the defendant and Chancey. During the altercation between Brady and the deceased, the former called the latter a liar, whereupon the deceased struck Brady over the head with an unironed single tree and knocked him down and insensible, and he so remained until the next morning. The blow was a glancing one; had it been direct, it might have

broken his skull. A severe flesh wound was the result. Immediately upon the blow being struck, the defendant and Chancey took hold of Shea and the stick with which the blow was inflicted. There is some doubt whether the defendant had hold of the stick, but he either had or had hold of Shea. The latter demanded the stick as his property, and said he wanted to put it into his shop. The defendant and Chancey, however, held on to it, and there was some struggling between them and Shea for its possession. During this time and while so struggling, they moved some two hundred feet along the street, Shea going backward in the direction of his shop. During this time, Harmon, a witness, told defendant and Chancey to let Shea have the stick, so he could put it into his shop, that he would not hurt them, or to let him, Harmon, have it. In reply to this, defendant said "God damn you, I know you," and Chancey said "knock that man down." About this time Chancey had his hand by his side, he raised it, something "snapped" or "clicked" and he struck Shea a blow. Thereupon Shea let go of the stick and ran toward his shop. Some one in the crowd shouted "he has gone for a hammer." The defendant ran after Shea, overtook him while he was trying to get into his shop and struck him with his fist, and Chancey immediately thereafter struck him two blows with the single tree and knocked him down, and then again struck him twice with the same instrument after he was down, and the defendant kicked him. The deceased's skull was broken and he died in a very short time.

A witness testifies that Harmon had hold of the stick at the time he told the defendant and Chancey to let Shea have it, but in no other respect does his evidence differ from that above stated.

The testimony tends to show that the deceased was hunting for Brady with the intent of having a difficulty with him, and that all these persons had been drinking, and at least some of them were intoxicated.

The defendant established a good character.

The errors relied on will be considered in their order.

I.   Instruction No. 8, given by the court, is objected to, and is as follows:

"8. If, therefore, you find established by the evidence with the degree of certainty hereinbefore stated, that the defendant on or about the 13th day of August, A. D. 1874, in the county of Wapello, in this State, in and upon one John Shea, did make an assault with a club; that such club was a dangerous weapon, calculated to produce or actually producing the death of said Shea, and there is no proof showing the same to have been accidental or upon provocation, more fully hereafter explained; or you find that one John Chancey so assaulted the said Shea, and the defendant aided and abetted its commission, then your verdict will be 'guilty, as charged in the indictment;' but if you find that no assault was thus made, or, if it was made, the same was accidental, or upon sufficient justification as hereinafter instructed, or that the same was made by one John Chancey and the defendant did not aid and abet its commission, then your verdict will be 'not guilty.'"

It is urged this instruction lays down the rule that, in order to acquit, the jury must find the "assault was accidental or upon sufficient justification, or that it was made by Chancey and the defendant did not aid or abet its commission." "Whereas, the jury should have been instructed, that if they had any reasonable doubts on these points, it was their duty to acquit;" and that the instruction was erroneous because inapplicable to the facts.

In a previous instruction the court said to the jury:

"2. To this charge the defendant has pleaded 'not guilty,' and this plea puts in issue every material allegation contained in the indictment, and before the State can ask a conviction, it must have satisfied you by the evidence, beyond a reasonable doubt, of the truth of each material allegation substantially as alleged."

Instructions are all to be considered and construed together. *Brown v. Bridges*, 31 Iowa, 138. Recognizing this rule, the

1. INSTRUCTIONS: to be considered together.

court said to the jury in the instruction objected to: "If, therefore, you find established by the evidence with the degree of certainty hereinbefore stated" the facts indicated in the instruction, you will find

the defendant guilty or not guilty, as you find the facts to be. This was equivalent to saying to the jury they must be satisfied of the facts necessary to convict beyond a reasonable doubt. It is not essential that every proposition should be accompanied with or qualified by the doctrine of reasonable doubts. It is sufficient if the court says to the jury once, that every fact necessary to convict must be established to their satisfaction beyond a reasonable doubt.

Why the instruction is not applicable to the testimony is not stated, and we confess our inability to imagine why it is not.

II. The following instruction was given:

"13. While defendant had the right to interfere and resist a felonious assault being made upon said Brady, if such an one was being made, even to the taking of life, still this would be no justification whatever to an assault subsequently made upon the deceased by defendant, if you find there was one. Therefore, if you find established by the evidence that the defendant interposed in an affray between the deceased and the said Brady, and prevented a threatened injury to the person of said Brady by Shea, if such was the case, such fact having been accomplished, it was the duty of defendant to have ceased from further interference with deceased, save he might have lawfully arrested the said Shea, informing him of such fact, and might have disarmed him, if he was armed, using reasonable and proper force therefor; but for this purpose he had no right to take the life of deceased, and if he did, such killing was unlawful and defendant is guilty of murder in the second degree, or manslaughter, as you may find the case to be under the instructions heretofore given you."

The objections to this instruction can be best stated in the language of counsel:

"Instruction No. 13 is erroneous to the prejudice of defendant, for the reason that it had a tendency to mislead the jury under the facts of the case, by instructing them that the right of defendant to interfere and resist a felonious assault upon Brady, would furnish him no justification whatever for sub-

2. CRIMINAL law: self defense.

sequently assaulting deceased. From this the jury would naturally infer a direction to the effect that the striking of Shea in the course of the affray was 'wholly unjustifiable,' and was equivalent to a direction of guilty of the crime charged. It is also erroneous and had a tendency to mislead the jury in instructing them that if the defendant took the life of deceased under the circumstances stated, he was guilty. It should have been qualified by adding: unless such killing were necessary to save the life of defendant or his person from great and imminent peril."

1. It depends upon when the assault was made by the defendant whether it was justifiable or not for the protection of Brady. The deceased assaulted Brady, and the defendant interposed under the belief, it may be, that unless he did so, the assault would be continued. All danger of any further assault on Brady was at an end. He was lying on the ground insensible, and the deceased, defendant and Chancey were two hundred feet distant from where deceased assaulted Brady at the time Chancey or defendant assaulted the deceased. Admitting that having taken hold of the stick and Shea, neither the defendant or Chancey could let go with safety so far as the protection of Brady was concerned, and that the first blow struck by Chancey was justifiable, there was no necessity for the protection of Brady that defendant should run after Shea and again strike him; such assault was wholly unjustifiable as a protection to Brady from any further assault by the deceased.

If the instruction amounts to a direction to find defendant guilty, if the jury found the enumerated facts to be true, it is not the fault of the law, as laid down by the court, but because of the existence of facts which made it the imperative duty of the court to so lay down the law. We have no hesitation in holding that the subsequent assault was "wholly unjustifiable for the protection of Brady."

2. It is urged this instruction should have been qualified by the thought "unless such killing was necessary to save the life of defendant or his person from great and iminent peril."

It will be readily seen this instruction has no reference to

the question whether the defendant was justified in the killing in order to protect his person or life, but is confined to the question as to how far or to what extent he was justified, because of the assault on Brady. Therefore, the objection is inapplicable to this instruction, however much it may be to the next which applies to the justification in defense of the defendant's life and person, and which instruction next demands our attention.

III. The 14th instruction is as follows:

" 14. If you find that defendant killed John Shea, or aided and abetted the killing, that the same occurred after the

3. ——: ——: altercation had between deceased and James
retreat.          Brady; if you find that there was such alterca- tion, that in such altercation the defendant interfered and prevented further injury to Brady by seizing hold of a club in the hands of Shea, that then a struggle commenced for the possession of the club, which lasted some little time, that finally defendant, either alone or in connection with John Chancey, succeeded in wresting the same from Shea's hands, that thereupon said Shea started to run towards and for his shop, that defendant honestly believed that he was going to the shop for the purpose of procuring a hammer or other dan- gerous weapon, and you further find that in the exercise of reason and judgment, the defendant could not with safety to himself or person, have retreated and got out of his way, then and in that case he would have been and is justified in taking the life of deceased; but if he could have retreated with safety —if it was not necessary to have followed him up and attacked him, if he did—if he might in the exercise of reason and judgment, have placed himself beyond danger, if there was danger, without resorting to the slaying of his adversary, then such killing is not justifiable, and the defendant is guilty of either murder as charged or manslaughter as the case may be."

That the defendant and Chancey committed a joint assault on the deceased is perfectly clear. They both seized hold of him, and if it be admitted this was justifiable by reason of the assault on Brady, and that afterwards and up to the time

Chancey struck Shea, it was justifiable on the ground that defendant and Chancey could not cease the struggle for the stick because their own safety demanded its continuance; the subsequent assault, after Shea ran, was wholly unjustifiable. If, when Shea ran, the defendant had even stood his ground, much more so had he retreated or ran in a different direction from that taken by Shea, this unfortunate homicide would never have occurred. There is nothing akin in the facts to a justification by reason of apprehended danger to the defendant's person or life. The court would have been justified in refusing to submit the question of justification to the jury, because there were no facts upon which it could have been based. Shorter v. The People, 2 Comstock, 193–202; The State v. Thompson, 9 Iowa, 188; The State v. Kennedy, 20 Iowa, 569.

Suppose the defendant did honestly believe the deceased was going for a hammer, this did not justify him in running after him. Instead of getting away from all danger of bodily peril to himself, he voluntarily placed himself in the way of such peril and now insists because he did so he was justified in killing the deceased. Whether there was apparent danger that defendant would receive great bodily injury has no foundation. At least he should have waited, stood his ground, and seen whether there was or not before rushing in and killing a fellow-being. The instruction, therefore, should not have been qualified by the thought whether it was "apparent to the defendant, as a man of ordinary prudence and reason," that there was danger to his life or person.

It is a mistake to suppose the instruction is based on the theory that defendant killed Shea. This, it is true, is submitted to the jury for them to find as a fact. Nor is it true it assumes the defendant struck the blow with the stick or club which most likely caused the death; nothing is said on this subject. The instruction, as a whole, was evidently given in the interest and for the benefit of the defendant, and is much more favorable to him than under the facts he was entitled to.

IV.   The sixteenth instruction is as follows:

"16   To constitute an aiding and abetting in the commission of a crime the presence of the accused alone is not suffi-cient to justify the conclusion that defendant assented to the commission of the alleged criminal acts, and such assent is a necessary element to be found as a fact before the prisoner can be found guilty as an aider and abettor.   The fact of such presence, if it be a fact, though, in connection with other circumstances, would be sufficient to justify you in inferring that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same.

"If you find that defendant jointly with one John Chancey attempted to wrest a club from the hands of the deceased and they were acting together, the one directing the other; that immediately after obtaining the club the defendant started after the deceased, being closely followed by the said Chancey who held the club, that defendant first reached the deceased and immediately commenced beating deceased with his fists, that as soon as Chancey reached the deceased he commenced, with the knowledge of defendant, to beat deceased with the club which they had jointly wrested from the hands of the deceased, that defendant, after blows had been inflicted with the club by Chancey, either continued to strike deceased or attempted to kick him, such facts would warrant you in finding that defendant aided and abetted said Chancey.   Upon this question as upon all others, you are to exercise reason and good common sense, and judge the defendant and his acts in the light of your knowledge of human nature and those motives which actuate and call into being the various movements of mankind and influence men in their conduct."

It is said there was no evidence showing that the defendant struck the deceased with his fist after Chancey struck with the stick, and hence it is urged the instruction was calculated to mislead the jury.

There was evidence tending to show that defendant, as Shea "fell, kicked him one or two times."   We are at a loss to know how the instruction by any possibility could mislead

the jury. The court did not submit the question as to a striking with fists, but whether he "continued to strike or attempted to kick."

It is urged that if the defendant struck the deceased with his fists only, he would not be liable. Certainly it is not intended by this that he must have had hold of the club at the time the fatal blow was struck, or that he must have known that Chancey intended to strike such a blow. If he and Chancey engaged in an assault and aided each other therein, each is responsible for whatever was done by the other, and also for the consequences resulting therefrom. *The State v. Farr*, 33 Iowa, 553, does not conflict with this rule. In that case there was no evidence that defendant participated in the act which caused the death. The defendant and the person who did the shooting came together, but no felonious intent even was shown. All that could be said was that he was present. The facts in the two cases are so materially different that no rule laid down in one would be applicable to the other.

V. After the jury had been considering as to their verdict for thirty hours, the court gave them the following instruction:

"Gentlemen of the jury, as to what and who are aiders and abettors, you are further instructed as follows:

"To aid and abet is to assent to an act, to lend to it countenance and approval, either by an active participation in it, or by, in some manner, advising or encouraging it. To constitute the defendant in this case an aider and abettor, it is not necessary that the proof should show that he with Chancey had hold of the club and assisted in striking the fatal blow, if such was done, nor that he knew that Chancey was about to strike such blow. It is sufficient if it appear that they were acting together in an unlawful assault upon the deceased, the one using his fists and feet, or either, and the other the club, if such was the case. If such are the facts in the case, it is immaterial who struck the fatal blow, if one was given, both are equally guilty. But if there was no connection between the acts of defendant and Chancey, if the assault made, if one was made, was not jointly done,

if the defendant and said Chancey were not together engaged in the assault, if one was made, but both were acting independent of and unconnected with each other, then defendant was not aiding and abetting said Chancey."

This instruction is objected to because it is in conflict with *The State v. Farr, supra.* In this we do not concur, for the reasons already briefly given. It is next urged the instruction in effect directs the jury that it was not necessary that defendant assisted in striking, or "that he knew or supposed Chancey would strike or was going to strike." But such is not the law, if, as the instruction states the rule, "they were acting together in making an unlawful assault." Under the facts, as heretofore shown, the instruction fairly and pertinently states the law.

VI. The instructions asked by the defendant were properly refused. They were either inapplicable or contained an incorrect statement of the law, or were embraced in those given by the court.

Having approved the instructions given, it follows where those asked and refused conflict therewith they contain an incorrect statement of the law.

The modification of instruction No. 9 is objected to for the reason that the modification " does not correctly state the law of the case." A careful examination of the instruction as modified fails to disclose wherein the law is stated incorrectly. The length of this opinion forbids the setting out of these instructions, or a statement of the reasons influencing us as to the conclusions reached at greater length.

VII. The defendant offered to prove, about half an hour before the affray took place between Shea and Brady, "that Shea was in an intoxicated or partially intoxicated condition, with an unironed single-tree—a deadly weapon (the one exhibited on this trial), that he said he was in search of Brady and was making threats of severe personal injury to Brady." To this the State objected, because immaterial and not brought home to knowledge of defendant, which was sustained. In this ruling there was no error. Unless the defendant had knowledge of these threats, his subsequent

The State v. Maloy.

action and conduct could not have been influenced thereby. The proposed testimony was, therefore, immaterial.

VIII.   About the time the defendant concluded his testimony he made the following offer:  "The defendant now offers **8. EVIDENCE: reporter's notes.** in evidence the transcript of the testimony taken in the former trial, and especially the testimony of John Whalen, John Van Heuseling, Dan Hannan and Mrs. Hannan, and especially the testimony or that portion thereof to which their attention was called for the purpose of contradicting said witnesses."  To which the State objected, on the ground that the proposed evidence was immaterial and not the original notes of the reporter.

The proposed evidence was properly rejected.   The abstract fails to state by whom the transcript was made.   Besides this, the original notes should have been produced, or a sufficient showing made why they were not.   At the conclusion of the rebutting testimony, the defendant moved the court that a recess be taken, or court adjourned until the arrival of the next train with the reporter and the original notes of such testimony.   This the court refused to do.   This was clearly a matter of discretion, and there are no facts before us which will warrant us in finding that such discretion was abused.

IX.   It is lastly urged the verdict is contrary to the evidence, and that the punishment is too great.   Without undertaking to set out the evidence any more fully than has been done, we deem it sufficient to say that, in our opinion, the verdict is clearly sustained by the evidence.   The defendant was sentenced to be imprisoned in the penitentiary for the term of nineteen years.   The evidence with great certainty points to Chancey as the person who struck the fatal blow. His punishment was reduced by us to ten years for reasons indicated in the judgment.   We are, therefore, of the opinion that the defendant should not be imprisoned in the penitentiary for a period longer than ten years, to date from the time judgment was pronounced by the District Court.   The sentence of the District Court should have been for ten instead of nineteen years, such being the minimum punishment fixed by statute, and judgment is accordingly entered in this court.

                                             AFFIRMED.