THE STATE v. WESTFALL.

1. **Criminal Law :** CORRECTION OF RECORD. An order for the correction of the record in a criminal case may be made in the absence of the defendant

2. ———: EVIDENCE: DYING DECLARATIONS. The dying declarations of a party that defendant killed him are not admissible in the trial of the defendant for the killing of another person, notwithstanding the killing of the latter took place at the same time the party making the statement was wounded.

3. ———: ———: DECLARATIONS OF PERSONS JOINTLY INDICTED. Declarations of persons jointly charged with an offense, made after the act, are not competent against one who participated in the crime, even though their effect be limited by the court to the establishment of the fact that the offense was committed.

4. ———: ———: DRINKING. It is competent to show, where the defendant pleads self-defense, that the party alleged to have been killed had been drinking before the affair, as showing his state of mind at the time.

5. ———: ———: DISPOSITION. Evidence of the disposition of the defendant to avoid quarrels with the deceased on former occasions was competent.

6. ———: SELF-DEFENSE. The law of self-defense will justify a person in defending those with whom he is associated, even to the extent of taking life, when all are assailed together, and he is acting under a reasonable apprehension that his own life is in danger.

*Appeal from Warren District Court.*

WEDNESDAY, OCTOBER 23.

THE defendant was convicted of murder in the second degree, and sentenced to twelve years confinement in the penitentiary, for the killing of George Howrey, and now appeals to this court. The facts of the case, so far as they are neces-

sary to be stated for a proper understanding of the points ruled by the court, are found in the opinion.

*C. C. Cole* and *Williamson & Parrott*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

BECK, J.—I. The indictment charges the defendant and eight others—one his father, two his brothers—with the murder of George Howrey. The defendants demanded separate trials, and upon the motion of the district attorney the defendant, whose case is now before us, was first put upon trial. Prior to the election of separate trials, and of the order therefor, the defendants united in successive motions for a change of venue and for a continuance. They were both overruled.

The facts connected with the homicide, so far as they are involved in the points upon which we find the decision of the case turns, may be briefly stated:

David Howrey and Reuben Westfall were respectable farmers, residing in Warren county. They were neighbors. Howrey had two sons—George and John. Westfall had three—Benjamin, Lewis and Levi. The families for a number of years had been on terms of open enmity; quarrels, lawsuits, and more than one rencounter between members of the hostile families had occurred. In the quarrels and fights the Howreys were usually the aggressors, and probably the victors. The respective families had adherents among their neighbors and relations, so that the forces were about equal. Insults had been often given by the Howreys to the other parties, and they had made threats of violence, which were communicated to the Westfalls. Both parties, or some of both parties, finally armed themselves with revolvers, knives and slung-shots. The evidence tends to show that the Westfalls were inclined to avoid meeting their enemies, and had left places of public resort, and when at school had declined to engage in play for that purpose.

With this state of feeling and disposition of the parties they

attended public services of a church on the night of the 19th day of February, 1876. The Howrey forces consisted of the father, two sons, James Groom (a nephew) and two other nephews, and two or three other persons; the Westfall party of the three sons of Reuben Westfall, three Dillards and two others. After the church services had been concluded, the belligerent parties started to their homes, all following the same road for a short distance. Just at the point where the Westfall party would leave the road a quarrel began, and a blow passed between David Howrey and one of the Dillards. The evidence is conflicting as to which struck the first blow. We think it clearly appears that the Howreys, upon this fatal night, as they had before, exhibited the most quarrelsome disposition, and one of them, Groom, in response to efforts of a neighbor who was present to secure peace, declared the purpose of settling the trouble by a fight at that time. The blow was the commencement of a general fight. Twenty pistol shots were fired. In less than a minute the battle was over, the Westfall party retreating toward their homes, and some of the other party retiring in another direction. But the result of the brief contest was frightful. The two sons of Howrey were found in a few minutes dead, or in the throes of death. Groom was fatally wounded, and died in a day or two; Howrey, the father, was severely wounded. The evidence does not show who fired the pistols. We are satisfied that some of each party were armed with these weapons. David Howrey and one of the other party each received a gun-shot wound; but the wounds causing the death of the three victims were such as would have been given by a two-edged knife or dagger. An instrument of that character was shown to have been in the possession of Benjamin Westfall before the fight, and in the hands of his father after.

Nine of the Westfall party were indicted for the killing of Groom, and separate indictments were found against the same parties for the killing of each of the other men who fell in the fight. The evidence as to the aggressors in the fight, the arms

borne, and their use by the different parties, is conflicting. We are not called upon, in the view we take of the case, to determine these disputed questions of fact. The case will be disposed of upon questions of law arising under the rulings of the court. The defendant insisted on the trial that he and his friends had acted strictly upon the defensive, and they had resisted the assault made upon them only to the extent demanded for the preservation of their own lives, which justified the slaying of their three enemies.

Numerous errors are assigned by counsel upon the record, which present objections to nearly every step taken in the case. We will find it necessary to examine but a few of them.

II. The defendant, at the term of court to which the indictment was returned, appeared in person and waived 1 CRIMINAL arraignment. The record, then made, showed that law: correction of record. six of the defendants had waived arraignment. At the next term a motion was made by the district attorney to correct the record in accord with the fact, which was sustained. This action, it is insisted, is erroneous for the reason that the defendants were not present when it was had. Their counsel were present and objected to the order making the correction. The order was in accord with the fact, and was properly made, unless the objection based upon the absence be valid. We know of no rule which required the proceedings of the court for the perfecting of its record to have been had in the presence of the defendant. It surely cannot be claimed that defendant ought to have been present when the clerk made up the record. If it became necessary for the court to direct the clerk in the performance of that duty, it may in the same manner have been done in the absence of the defendant. The court's order required the record to be corrected as it should have been entered in the absence of defendant. The order, then, pertaining to the discharge of duty by the clerk, and being intended to secure the correct performance thereof, was properly made in defendant's absence.

III.   The defendant made application for a change of venue, based upon the prejudice of the judge, and supported it by proper affidavits. It was refused. This action rested upon the sound discretion of the court. Code, § 4374. It is not made to appear that this discretion was abused.

IV.   During the progress of the trial witnesses were permitted to testify, against defendant's objection, to the decla-

2. ——: evidence: dying declarations.
rations of Groom, made immediately after the fight, to the effect that he was mortally wounded by a stab, which he knew was given him by defendant. This testimony was not admissible as dying declarations, for defendant was not in this case on trial for killing Groom. As to this case they were clearly hearsay declarations, relating to a crime for which defendant was not on trial. This illegal testimony could not have been otherwise than prejudicial to the defendant. Its admission was erroneous.

V.   A witness was permitted to testify, against defendant's objection, to a conversation had with one of the Dillards on

3. ——: ——: declarations of persons jointly indicted.
the way home from the fight. Acts and declarations of the father of defendant, who it will be remembered is jointly indicted with him, at times subsequent to the fight, were also admitted, against defendant's objections; and like declarations of another of the parties indicted with defendant, made long after the fight, were also received in evidence. This evidence tended to show the participation of the parties making the declarations in the commission of the crime. It was clearly incompetent. The Attorney General does not contend with great confidence that the evidence was admissible, but he insists that its admission did not work prejudice to defendant, for the reason that the other evidence, apart from this now under consideration, was amply sufficient to authorize the verdict. But his position is unsound. Without the illegal testimony the jury may not have found the verdict for the State; this testimony may have made the complement of proof which satisfied their minds. In that case the defendant would have been convicted

upon illegal evidence. This court cannot determine what quantity of evidence was lawfully sufficient to authorize the verdict.

The court below, in an instruction, directed the jury that the evidence we are now discussing should not be considered in order to determine whether defendant was concerned in the commission of the homicide for which he was indicted. But the court adds, in the same instruction, "evidence of this character has been admitted only as tending to show that a public offense was committed, and the character of that offense, and not for the purpose of connecting the defendant with its commission."

Under the rules of evidence declarations of other persons, jointly charged with an offense, made after the act, are not competent against one who participated in the crime. Such declarations are regarded as any other hearsay testimony. It is just as inadmissible for one purpose as another.

The instruction quoted directed the jury to consider the evidence for the purpose of determining the character of the offense. It will be readily seen that such evidence was prejudicial to defendant. Upon it the jury may have found the crime to have been of a higher grade than they otherwise would have considered it.

VI. The defendant proposed to prove that one or more of the Howrey party, a short time before the fight, drank intoxicating liquor. The evidence was rejected. We think it should have been admitted. The condition of mind of the parties engaged in the fight should have been fully known to the jury. If there existed causes for excitement it should have been known. The Attorney General replies to the objection by the remark that "the mere fact of drinking was immaterial. While it might have been proper for the defense to have shown that the deceased was intoxicated that night, merely to have proved that he had been drinking was immaterial." But it occurs to us that a proper way—one way, at least—to show intoxication is to

prove the drinking of intoxicating liquors. The drinking being shown, the jury would have determined its effect, if any, in producing excitement in the mind of the deceased.

VII. The defendant introduced testimony tending to show that on one or two occasions the Westfalls and Dillards had sought to avoid quarrels and conflicts with the other party. But in one or two instances evidence of like character was excluded by the court. It ought to have been freely admitted. It would throw light·upon the case, which would reveal the spirit and disposition of the parties, and thus disclose grounds of inference as to which party was the aggressor, thus enabling the jury to determine the character of the offense.

VIII. A defense interposed was in effect that the Howrey party were the assailants, and used deadly weapons in the attack, and that the killing done in resistance thereof was an act of defense necessary for the preservation of the lives of defendant, and of his brothers and friends engaged with him in the conflict. The court gave certain instructions upon the subject of self-defense which are correct enough when considered in reference to the defense of defendant's own person. But it cannot be denied that if the defendant was one of the assailed parties who were not the aggressors, but stood upon the defensive, he was authorized to defend those associated with him on the same side in the affray against a deadly assault, under well-grounded apprehension that their lives were in danger, even to. the extent of taking the lives of the assailants. In such a case the doctrines of the right of defense are not different from those authorizing the defense of one's own person. See 2 Wharton on Criminal Law, §§ 1019, 931; Wharton on Homicide, p. 230; Bishop on Criminal Law, § 877. See, also, *The State v. Maloy*, 44 Iowa, 104. The defendant asked instructions applicable to this branch of the case, which were refused, and no instructions presenting the doctrine we have stated were given. The instructions asked by defendant upon this branch of the case

are probably broader in their scope than is warranted by the law, and should have been to some extent modified. But we think the failure of the court to give instructions presenting the true rule upon this point of the case was prejudicial error.

IX. The defendant requested the court to give the following instruction, which was refused:

"No. 7. If, upon the entire evidence, you shall find that there was no combination or joint purpose, or action of this defendant with the others, or any of them indicted with him, then the defendant can only be held responsible for what he himself did at that time. And if in such a case you should believe, upon the whole evidence, that it is uncertain or doubtful whether the defendant, Benjamin C. Westfall, now on trial, or some other one of said defendants, struck the fatal blow upon the deceased, it will be your duty to find the defendant not guilty."

The instruction ought to have been given. The correctness of its principles and its applicability cannot be doubted, and we find nothing in the instructions given which presents the same thought.

X. We discover no errors prejudicial to defendant in the giving or refusal to give other instructions. The questions raised by counsel upon these rulings need not be considered. Other rulings of the court need not be discussed, as the questions involved therein will not arise upon a re-trial of the cause. Because of the errors we have pointed out the judgment of the District Court is reversed, and the cause is remanded for another trial.

REVERSED.