STEELE SMITH GROCERY Co., Appellant, v. HENRY A. POTT-
HAST.

**Undisclosed Agency:** An undisclosed principal is liable for goods
sold to an agent in the latter's name, where the purchase is
within the scope of his agency.

**EVIDENCE OF.** In an action to recover for goods sold and delivered
to an undisclosed agent of defendant, and charged to the agent,
evidence that defendant lived in another state; that the agent was
his son, and managed the business in his own name; that the
goods were sold to him as proprietor; and that neither the
father nor son had ever mentioned to whom the stock belonged,
it being admitted, also, that the attorneys for plaintiff were
ignorant of the agency, will warrant a finding that the agency
was unknown to the seller at the time the goods were purchased.

**ELECTION.** Where, after an action for goods sold and delivered had
been commenced against an undisclosed agent, the fact of agency
was discovered, the commencement of the action does not con-
stitute an election to charge the agent so as to preclude an action
against the principal, nothing further being done after discovery,
tending to look to the agent for compensation.

**Review of Testimony: CONTRADICTIONS.** Testimony of a witness
inconsistent with former statements and testimony under oath
may be disregarded.

**ADMISSION AGAINST INTEREST.** In an action for goods sold, on the
ground that defendant was the undisclosed principal of another,
proof of a statement made by defendant that he was owner of
the stock of goods among which the goods sued for were placed,
and testimony by him in another proceeding that he was the
owner, some of it given as garnishee and producing discharge as
such, are admissible as declarations against interest, where l e
denies that he is the purchaser.

**IMPEACHMENT OF OWN WITNESS.** Proof of such statements, when
offered as part of plaintiff's case, and before defendant has testi-
fied for plaintiff except to identify his (defendant's) signature,
cannot be said to tend to impeach him, as for all that appears
at the time of its reception, he may testify in harmony therewith,
and such admissions are substantive evidence which may be used,
though it may incidentally work an impeachment by affecting
credibility.

**MINUTES BEFORE GRAND JURY.** Under Code, section 5258, which
requires minutes of evidence taken before the grand jury to be
kept, and signed by the witness, and returned with and attached

to the indictment; and section 5277, which provides that the minutes shall not be open for the inspection of any person except the judge, the county attorney or his assistant or clerk, and defendant or his counsel, or his assistant, or clerk—a clerk may refuse to produce the minutes as evidence in a civil action, but, if offered, they are competent as declarations against the interest of the party giving such evidence.

**Trial de novo:** BY STIPULATION. Where, in an action to recover for goods sold and delivered, the parties by agreement stipulate that it shall be tried as an equity action, it must be so treated on appeal.

CERTIFICATE TO SHORTHAND REPORT. Where a reporter's shorthand notes were duly certified by the trial judge, and on making his transcript thereof the reporter detached the certificate from the notes and attached it to the transcript, such detachment being unauthorized, does not affect the validity of the notes; and its attachment to the transcript will be treated as though it were a copy, and the transcript so certified treated as written evidence.

*Appeal from Carroll District Court—*HON. Z. A. CHURCH, Judge.

THURSDAY, OCTOBER 19, 1899.

. ACTION against defendant for goods sold and delivered W. H. Potthast as his agent. Decree for defendant, and plaintiff appeals.—*Reversed.*

*Lee & Robb* for appellant.

*G. W. Bowen* and *B. I. Salinger* for appellee.

LADD, J.—The plaintiff sold and delivered to W. H. Potthast goods of the value of two hundred and seventeen dollars and sixty-eight cents, in 1895, and in this action recovery is sought on the ground that in making the purchase said Potthast was acting as agent of his father, the defendant. By agreement of the parties the cause was tried as an equity action, and must be so treated here. *Harrison v. Palo Alto County,* 104 Iowa, 383. The defendant's liability depends on whether he or his son was owner of a stock in trade at Manning at the time

the goods were bought by the latter. The theory of the plain-
tiff is that the defendant was the real owner, and conducting
the business through W. H. Potthast as his agent.   The
stock was originally purchased from one Fritz, February 23,
1895, for two thousand dollars, furnished by the defendant,
and a bill of sale was made out in his name at the son's
suggestion.   Seven hundred and thirty-six dollars were
returned to him, and on July 17, 1895, the son executed to
the defendant two notes, of one thousand dollars each, and a
mortgage covering the stock, securing their payment, and the
mortgagee subsequently became purchaser under foreclosure
proceedings.   In the meantime W. H. Potthast was in pos-
session apparently as owner, and both he and the defendant
testified at the trial that he had borrowed the money, and
was in fact the owner.   But the defenlant had so
often declared otherwise before that time, that we
are inclined to place greater reliance on his previous
admissions and sworn statements.   To a deputy sheriff, in
hearing of another, when making a levy on part of the goods
as the property of his son, he declared he was owner of
them, and that his son had been his agent while in business
there.   In a suit by the Wilson-Graham Company against
W. H. Potthast, he answered under oath as garnishee:   "Q.
You swear that W. H. Potthast never owned the stock until
you got the mortgage?   A.   Yes.   Q.   The stock was yours
until that day?   A.   Yes; I sent him two thousand dollars
here in Manning to buy the stock of goods for myself, and
the boy was not to own the stock.   On the date of giving
the mortgage the boy had no interest in the stock; no, sir."
In a suit by the plaintiff against W. H. Potthast he gave
substantially the same answer.   He signed minutes of his
testimony before the grand jury, stating:   "I bought the
stock for myself, for my boy to dispose of.   There was no
mortgage on the goods until I sold my boy the goods and
took the mortgage for the same."   True, he attempted to
explain these various statements by saying he referred to a

time subsequent to the foreclosure sale; but his answers taken down in shorthand are clear and explicit, and leave no doubt concerning the time to which he had reference. Evidently his interest led him to assert ownership at the time of the levy, and in his answers as garnishee, as evidently for the same reason he now disclaims such ownership. Having procured his discharge as garnishee on the strength of statements then and repeatedly made, it is only fair to credit him with then telling the truth. As he lived at Freeport, Ill., and the son was to have all the profits over interest at 7 per cent. per annum, the method pursued was that of convenience. As the money was furnished without evidences of indebtedness, the son caused the bill of sale to run to the father, the mortgage was largely in excess of the amount due, and the defendant has thrice emphatically declared on oath that he purchased, and was owner of the stock in trade, and that W. H. Potthast merely acted as his agent, we so hold, and disregard his testimony to the contrary given at the trial.

II. Proof of the admissions and statements of defendant was admissible. These were not offered as impeaching evidence, but as made by a party to a suit, against his own interest. Such evidence is substantive in character, although it may incidentally affect credibility. *Thorn v. Moore,* 21 Iowa, 285; 10 Enc. Pl. & Prac. 317, 327. See *Smith v. Dawley,* 92 Iowa, 315. When introduced, the defendant had not testified in his own behalf, and he only identified his signature when called by the plaintiff. Such proof, when offered then, had no tendency to impeach him as a witness, as, for all that appeared, he might testify in harmony with what he had previously stated under oath.

III. The objection to the minutes of evidence given by the defendant before the grand jury, and signed by him, was not well taken. Section 5258 of the Code requires minutes to be kept, and "when the evidence is taken it shall be read over to and signed by the witness." These minutes are to be returned with and attached to the indictment, but "shall

not be open for the inspection of any person except the judge of the court, the county attorney or his assistant or clerk, the defendant and his counsel, or the assistant or clerk of such counsel." Section 5277, Code. While this section might furnish ground for the clerk to refuse the production of the minutes in a civil case, it does not affect their admissibility as evidence when offered. Having been read over to the witness and signed, they may be received as in the nature of admissions against the party giving the testimony. We know of no rule that would restrict the use of such minutes to cases of perjury.

IV. But it is urged that recovery cannot be had in this case because the principal has not been shown to have been unknown. The defendant and his son testified neither had ever mentioned the ownership of the property, and that the son had managed the business in his own name. The goods were sold to him as proprietor by the plaintiff, and it was admitted that the attorneys of the latter knew nothing of the ownership by the defendant prior to the time he gave his answers as garnishee. All this time he was a resident of another state. We think these circumstances sufficient to warrant the conclusion that the agency of W. H. Potthast was unknown at the time the goods were purchased; and that defendant was the real owner of the stock had not been disclosed. That recovery may be had from an undisclosed principal for goods sold to an agent acting within the scope of his authority is well settled. *Thurston v. Mauro,* 1 G. Greene, 231; *Davison v. Coke Co.,* 24 Iowa, 419; *Young v. Insurance Co.,* 45 Iowa, 377; *Hubbard v. Tenbrook,* 124 Pa. Sup., 291 (16 Atl. Rep. 817), 1 Am. & Eng. Enc. Law, 139. But an action had already been begun against the agent for the price of the goods, and it is said that the plaintiff, having elected to charge the agent, cannot maintain this action against the principal. The cases are not in entire harmony on this proposition. In *Beymer v. Bonsall,* 79 Pa. St. 298, it was held that

in such a case the principal would not be discharged short of satisfaction. In *Kingsley v. Davis,* 104 Mass. 178, an action prosecuted to judgment against the agent was held a bar to an action against the principal. In *Ferry v. Moore,* 18 Ill. App. 135, it was adjudged that instituting a suit against the agent after the discovery of the principal was not conclusive evidence of an election to charge the agent only. See *Raymond v. Proprietors,* etc., 2 Metc. (Mass.) 326; *Maple v. Railroad Co.,* 40 Ohio St. 313; *Priestly v. Fernie,* 3 Hurl & C. 977. As found, the plaintiff was ignorant of the fact that the defendant was principal and W. H. Potthast acting as agent until long after suit had been brought against the latter. Knowledge of the right to recover from the principal is essential, before suit against the agent may be regarded as an election to look to the latter alone for payment. Without knowing who the principal was, or the fact of agency, an intelligent election was impossible. To constitute an election, there must be something to indicate an intention, with full knowledge of the facts, to give sole credit to the agent and to abandon all claim against the principal. Wharton Agent, section 472. Nothing was done by the plaintiff, after ascertaining that defendant was principal, tending to show an intention to look to the agent for compensation.

V. The several motions of the appellant attacking the record require no attention. The notes in shorthand were duly certified by the trial judge, but the reporter, when he had extended these, instead of copying the certificate, detached it, and pasted it in as a part of his own to the transcript. As this was unauthorized, it did not affect the record as already made, and amounted to nothing less than including the judge's certificate, instead of a copy, in that of the reporter. While the reporter had no right to detach the certificate, using it was equivalent to making a copy, and the transcript as so prepared and certified must be treated as written evidence. *Ross v. Loomis,* 64 Iowa, 432; *Goelz v. Stutsman,* 73 Iowa, 693; *Burnett v.*

*Loughridge,* 87 Iowa, 324; *Smith v. Wellslager,* 105 Iowa, 142.

We conclude that judgment should have been entered against the defendant.—REVERSED.