KATIE WILDEBOER, Appellee, v. HENRY PETERSEN, Appellant.

**WITNESSES:  Impeachment—Testimony Before Grand Jury.** The written testimony, signed and sworn to by a witness before the grand jury, is not the *only* competent evidence of what the witness testified to. The testimony of the members of the grand jury is likewise competent.

**EVIDENCE:  Cumulative Evidence—Impeachment.** Testimony of a series of fact statements tending to the impeachment of a witness is not necessarily cumulative to other and *different* fact statements likewise tending to impeachment.

**TRIAL:  Instructions—Stating Weight of Testimony.** To charge, in substance, that a material issue is *"probably"* established by proving certain other matters is reversible error.

**RAPE:  Complaint—Permissible Details.** A witness may testify that prosecutrix stated "that defendant had sexual intercourse with her." Such a statement does not go into unallowable details.

*Appeal from Tama District Court.*—J. W. WILLETT, Judge.

### DECEMBER 15, 1919.

ACTION at law to recover damages for an alleged unlawful assault and attendant defilement of the plaintiff. Trial to a jury, and verdict and judgment for plaintiff for $1,500. Defendant appeals.—*Reversed.*

*Cosson & Francis* and *H. J. Ferguson,* for appellant.

*C. A. Pratt* and *R. P. Kepler,* for appellee.

PRESTON, J.—1.  Plaintiff alleges that, in the evening of September 27, 1912, defendant did willfully and forcibly assault plaintiff, while she was in a shed, gathering eggs, threw her upon the floor of said building, and did forcibly and with menace, against her will, carnally know and debauch plaintiff, and did defile and have carnal connection with her against her will, causing her to become pregnant

and to bear a child, which was stillborn; that she became sick and sore, and sustained injury to her health, reputation, and feelings, causing her great humiliation and sorrow, for which she asks damages. These things are denied by the defendant. This case has been here before. 182 Iowa 1185. On the former appeal, it was held, without a review of the testimony, that the evidence was sufficient to take the case to the jury. Informations were filed against defendant, first charging seduction, and later, rape, by a person other than plaintiff, wherein the date of the alleged transaction is different from that testified to by plaintiff, making some confusion, or perhaps conflict. There were also some contradictory statements by plaintiff, and perhaps some other witnesses, evidence of which was introduced by way of impeachment. In view of a retrial, we shall not set out the evidence. The credibility of the witnesses, including plaintiff, and the weight to be given their testimony, was for the jury. *State v. Carpenter*, 124 Iowa 5; *Landis v. Interurban R. Co.*, 173 Iowa 466, 471. The case was for the jury, and defendant's motion for a directed verdict was properly overruled.

We shall set out enough of the testimony to show the bearing of some of the errors assigned. At the time of the transaction, alleged to have occurred on September 27th, which, we understand, was Friday, plaintiff was a single woman, 28 years of age, and in good health. She had worked out, some years previous, but, at the time in question, was living with her mother and step-father, who were the tenants of the defendant. She was born in Germany, and had attended school but little, and had only reached the second reader. She could understand only a part of the English language. She details the length and extent of her acquaintance with defendant, his visits to her home and attempted liberties with her, by defendant's taking hold of her and pinching her limbs and other parts of her person

before the transaction in question. Says he told her at one time that he dreamed he slept with her. At the last trial, she was not in good health, and was unable to give her testimony without taking rests, and at one time, while on the witness stand, fainted in the presence of the jury, and was carried from the room. She testifies that, on the evening in question, at about sundown, she went out to the outbuilding to gather eggs, going first to the chicken house, and then to the north shed of the barn; that, in the shed, some-one grabbed her by the shoulder, and, looking around, she saw defendant, and said to him, "What you want?" and he said, "Be still," and put both hands on her shoulder; that she screamed, and he said, "Be still, or I'll choke you," and again, "Be still, or I will fix you," then pushed her dress, and went on top of her and had intercourse with her (we do not give her exact language as to the last sentence); that she fought him with her arms and legs; that she screamed; that defendant then got off of her; that she went to the house where her mother was in bed; that, when she went to the house, she was crying; that she told her mother what had happened to her in the shed; that her calico dress was torn; that, when she went into her mother's room, her hair was down a little, and there was straw in it; that, after she went to her mother's bedroom, she went upstairs, washed herself off, put on another dress, and went down stairs again, and laid on the bed with her mother; that she was crying; that, in 10 or 15 minutes after that, she washed her face, made up her hair, and came out into another room, and then made the meal for the threshers, her mother helping; that, the rest of the evening, she was caring for the work around the house, and serving supper for the threshers, who arrived about 8:30. The mother of plaintiff, testifying through an interpreter, corroborates her testimony as to acts of defendant towards plaintiff before the assault; also, the condition of plaintiff's clothes, hair, and body, im-

mediately after the assault, and as to the complaints; also, about plaintiff's being sick for a considerable time before the birth of the child, and afterwards. Plaintiff's child was born in June, 1913, and lived but a few minutes. Plaintiff's mother testified that the doctor stayed a while after that, and then we have this record:

"Q. Was you in the room that night when the baby was born, when the doctor showed the baby to Katie? A. Yes. Q. Was you there when they got the baby laid in the casket, and showed the baby to Katie in the casket? (Objected to as immaterial to any issue in the case, the only purpose at all can be to win the sympathy of the jury as far as may be, by a recital of these facts which have certainly been gone into with sufficient fullness, etc. The court: That may be true, unless there is a possible chance of some effort to contradict it, it being denied in the pleadings—why, I think a reasonable amount of it may be indulged in. Objection overruled. Exception.)"

There seems to have been no direct answer to the question. The next that appears is that witness says she stayed there in the room after the baby was born. Other evidence will be referred to later, and in connection with the consideration of the errors, if it appears necessary.

2. There was some controversy in the trial below between the court and one of appellant's counsel, running through the trial. These matters are set out quite fully in the abstract, and argued at some length. Appellant complains strongly of the alleged misconduct of the trial court in this respect. In view of a reversal on other grounds, we do not decide this point. *Davis v. Hansen,* 187 Iowa 583. There may be less contention, and all may be more patient, considerate, and respectful at the next trial.

3. The first error assigned is in regard to the exclusion by the court of testimony of six members of the grand jury, offered by defendant for the purpose of showing admissions

by plaintiff, and for impeachment. After

**1. WITNESSES: impeachment: testimony before grand jury.** showing that plaintiff appeared before the grand jury in September, 1913, when the question as to whether defendant had com-

mitted a criminal offense was under investigation, defendant sought to show statements made by her to the grand jury. This testimony was objected to by the plaintiff as incompetent, not being the best evidence of what the testimony was, as given by the witness before the grand jury at that time; that the record of the testimony, kept by the clerk of the grand jury, signed by the witness, is the best evidence, and, as shown by the witness, such testimony before the grand jury was taken, reduced to writing, signed by the witness, and kept by the clerk; and that no showing has been made that such documentary evidence could not be produced. The objection was sustained, and defendant offered to show by said grand jurors that, at the time referred to, plaintiff stated to the grand jury that defendant came to her in the shed, laid her down, and had intercourse with her; that he used no force; that, when asked if he tore her clothes, she replied, "No, they were old and ragged;" that, when asked if she fought him off, she would not answer; that, when asked whether or not she screamed, she said no; when asked whether or not Petersen made any threats against her, she said, "Petersen said nothing;" that, when asked as to when she told her mother about her trouble with Petersen, she replied that it was not until a long time afterwards, and not at the time the trouble occurred; that the county attorney was present, and conducted the examination. The ground of the ruling, as stated by the court is:

"We have come to an abiding conclusion that the same sacredness should obtain over the introduction of testimony as regards what took place before the grand jury that obtains in the endorsement of contracts that are reduced to

writing, and that the record that is made before a grand jury is what binds the witness in a controversy that may thereafter arise as regards what took place in the grand jury room. The theory upon which the objection is sustained is that, as a record was kept and signed by the witnesses, as provided by law, that such record becomes the best evidence. That is the gist of the court's view: that is, there is no effort to produce the original signed statement.

"Mr. Cosson: We don't know if it is in existence. I had the clerk of the court investigate, and the county attorney, and both told me that they could not find any record of the minutes. The county attorney had searched very diligently for them. I make this statement to the court professionally.

"The Court: Well, if they were to testify to it, I don't know just what I would do; I think I would still sustain the objection—and still, I don't know."

Cases are cited by appellee to the general rule that the best evidence must be produced, or a legal excuse given why it is not. To sustain the ruling, appellee cites the statute, Section 5258, Code Supplement, 1913, which provides that the clerk of the grand jury shall take and preserve minutes of the proceedings, and of the evidence, etc., which shall be read over to and signed by the witness. This does not require that all the evidence shall be taken down, and we do not understand it to be the practice to do so. The offer was not to show what was taken down and signed by the witness. Undoubtedly, had the writing been produced, it would have been competent evidence against the plaintiff, either as an admission by her, or to impeach, if it was contrary to her testimony given on the trial. Had it been produced, she would have been entitled to show that what was reduced to writing and signed by her was not all the testimony she gave, but a synopsis or minutes of her testimony. Such is the situation in some of the cases cited. Appellee

also cites *Ford v. Dilley,* 174 Iowa 243, 275. We think that case is not in point. True, it was said that the minutes are a solemn court record. The opinion in that case refers to *Steele Smith Groc. Co. v. Potthast,* 109 Iowa 413, as holding that the minutes are admissible in evidence in a civil case as an admission, because they had been read over to the witness and signed. It seems there was a different rule, before the change in the statute requiring that the minutes be signed. It was also said in the *Ford* case, at page 277:

"One can conceive the accused's objecting to the use of the minutes as evidence. He had no part in their making, no right to cross-examine or impeach, or to counter prove. But why should the State wish, or be allowed, to object?"

The State was not objecting, in the instant case; but it was the plaintiff, and not the defendant. But the *Ford* case was a habeas corpus case, wherein the plaintiff had been indicted, and was seeking admission to bail. The holding was, in substance, that the State could not go behind the indictment and the minutes of the grand jury, and supply additional testimony to that attached to the indictment, for the purpose of showing that the evidence of the guilt of defendant was strong and the presumption great; and it was held, on habeas corpus, in an application to be admitted to bail, that the minutes of the testimony returned with an indictment are competent for either the State or accused, and that the State may rely on them, as justifying denial of bail, or the accused, to show that they are insufficient to justify such denial. Appellee also cites *State v. Phillips,* 118 Iowa 660, 668. In that case, a witness who was not a party admitted, on cross-examination, that minutes of his testimony before the grand jury had been read over to and signed by him. Later, the defendant offered the minutes in evidence, as tending to impeach the witness. They were excluded, on the State's objection. The court held that they were admissible, but that, under the circumstances of that

case, the refusal was not prejudicial. But that is not this case. *State v. Hoffman,* 132 Iowa 587, is also cited, but we find no such case at the citation, nor anything on this subject. Doubtless, the same title in 134 Iowa 587 is intended. In that case, it was held that the State might use the minutes of the testimony of a defendant, taken before the grand jury and read over to and signed by him, for the purpose of impeaching his testimony as a witness upon the trial, when the proper foundation had been laid. Both parties cite *McDonald v. Mutual Life Ins. Co.,* 178 Iowa 863, 865. The case simply holds that the testimony given before the grand jury is admissible to bind the witnesses who gave it. The opinion does not state whether this was shown by the minutes of the evidence before the grand jury, or whether witnesses gave evidence as to what they heard testified to before the grand jury. Appellant cites, on this proposition, *State v. McPherson,* 114 Iowa 492, 501, *State v. Hector,* 158 Iowa 664, 671, and the *McDonald* case, supra, to the point that members of the grand jury, county attorney, or clerk of the grand jury, may testify as to what the witness said before the grand jury; also, *State v. Mushrush,* 97 Iowa 444, 449, that a juror may testify as to what a witness said, even though that testimony was taken down in shorthand; and *Worez v. Des Moines City R. Co.,* 175 Iowa 1, that an unsigned memorandum may be offered against the party in interest, even though a signed memorandum is in existence, and that the statute in regard to the minutes of evidence is not mandatory. *State v. Ottley,* 147 Iowa 329, 332; *State v. O'Malley,* 132 Iowa 696. The *McPherson* case does not quite reach the point. The holding in that case was that the clerk of the grand jury was competent to show what was testified before the grand jury. There was no question as to whether the minutes were the best evidence or not. The point decided there was that the clerk was competent, notwithstanding his oath of secrecy. In the

*Hector* case, the prosecuting witness in a seduction case, in explanation of the reason why she had not stated to the grand jury certain matters testified to on the trial, said that she was not interrogated with respect to such matters. It was held competent for the county attorney, who questioned the witness, and acted as clerk in taking down the minutes, to testify that she was, in fact, questioned regarding such matters. That was the point decided in that case, and does not reach the question now before us. The *Mushrush* case is more nearly, though not quite, in point. That decision was rendered before the change in the statute, in regard to signing the minutes; but we shall see later that the purpose of the statute in regard to signing the minutes is to enable the witness to correct his statements before signing. In that case, a juror who sat on the trial of one jointly indicted with defendant was permitted to state what defendant testified to on that trial. It was contended that, under the authority of *State v. Maloy*, 44 Iowa 104, the reporter's notes were the best evidence. In the *Maloy* case, an unauthenticated transcript of the reporter's notes was offered, and the court held that the original notes must be produced before a copy could be permitted; and the court said, in the *Mushrush* case, that it was not held in the *Maloy* case that one who heard and remembered the former testimony might not testify as to what it was, and said it was a common practice to have reporters, after refreshing their recollection, state what it was. The court said, further:

"Surely, it is no more hearsay or secondary for one who heard and remembers to state what it was, than for a reporter whose memory is refreshed by his notes."

In *State v. Carroll*, 85 Iowa 1, grand jurors were permitted to testify as to certain statements made by the defendants before the grand jury. But the only objection made was that the statements were not voluntary. The

court holds that they were voluntary, and that the evidence was admissible. In the note to *State v. Campbell*, 9 L. R. A. (N. S.) 533, 534, a number of cases from other states are cited, holding that members of the grand jury may testify as to confessions or admissions; likewise, the State's attorney, or his stenographer, who reported the testimony; or the clerk of the grand jury; or the signed statement of accused, made before the grand jury, may be received. And in *Grimslinger v. State*, 44 Tex. Crim. Rep. 1 (69 S. W. 583), it was held that the fact that the testimony of accused before the grand jury was reduced to writing, will not preclude, the introduction of parol evidence thereof. Other citations are given as to the admissibility of admissions at the coroner's inquest, or before committing magistrates. See, also, 4 Jones on Evidence, Section 765, Note 48, and cases. These citations hold to the general doctrine that the testimony of grand jurors and the like is admissible. We shall not take the space now to note the circumstances of each case, or the statutes under which such cases were decided.

*State v. Dean*, 148 Iowa 566, 573, is, we think, more nearly in point. In that case, a witness was allowed to testify that he was in the court room during the trial of one jointly indicted with defendant, and to state what defendant testified to on that first trial. The objection was that, the evidence having been taken down in shorthand, the shorthand notes, or the translation thereof, would constitute the best evidence, and that the witness who heard the testimony should not have been allowed to detail it. Counsel for defendant rely upon the statutory provision that the shorthand notes, or a transcript thereof, are admissible as a deposition, for the purpose of proving what the testimony of a witness was on a former trial, and as excluding the evidence of one who was present and heard the testimony. Such statute provides, in substance, that the short-

hand notes, or a transcript thereof, duly certified, are admissible for purposes of impeachment, and have the force of a deposition.   We said:

"We see nothing in the language of the statute to indicate an intention that this method of proof shall exclude the oral testimony of a witness who heard the evidence as to what it was.   *   *   *   Cases from other states cited by counsel, holding that the sworn statements or testimony of a witness on a coroner's inquest or a preliminary examination, which statements are required by statute to be signed by the witness, constitute the best evidence of what such statements or testimony was, and that parol evidence thereof is inadmissible as secondary, are not in point, for the provision that the statement or testimony shall be signed by the witness is evidently intended to give to such statement or testimony added weight by enabling the witness to correct his statements before signing if he shall find that the minutes are not a proper embodiment of what he desires his statement or testimony to be.   *   *   *   We reach the conclusion that evidence as to the statements of a witness on a former trial which would have been competent prior to the enactment of this statutory provision above quoted, are not rendered incompetent by that provision."

And we think this is true in regard to the minutes of the evidence.   Cases before cited hold that the provision is not mandatory.   It is possible that a case might arise where the minutes would be the best evidence,—as, for instance, if it was material to show what was taken down.

We hold that the offered evidence was admissible, and that the trial court erred in excluding it.   When her evidence is admitted, the weight of her testimony on the trial, notwithstanding contradictions which may be shown, is for the jury.   *State v. Carpenter*, supra.   It is

2. EVIDENCE: cumulative evidence: impeachment.

contended by appellee that, since the testimony was offered for purposes of impeachment, the error, if any, was without preju-

dice, because other witnesses for defendant gave similar testimony, and therefore the offered ·evidence is only cumulative.    *State v. McPherson,* 114 Iowa 492, 501; *Rime v. Rater,* 108 Iowa 61.    This is the rule in some cases.    In the instant case, the testimony is of a party, the plaintiff, and defendant claims that evidence of her statements is original evidence.    The holding in the *McPherson* case was qualified somewhat in *Thompson v. National Cable Co.,* 160 Iowa 403, 408.    In the *Rime* case, it was held that the admission of testimony is without prejudice, where the same state of facts was testified to by another without objection.    Appellee's argument as to the cumulative feature is very brief.    It is true that the sheriff testified to a conversation with plaintiff in the fall of 1913, and questioned plaintiff concerning the matter; that he understood the nature of the charge of rape, and interrogated her with reference thereto; and that she told him, in answer to questions, that she did not make any outcry; that defendant did not threaten her; and that she said she did not make any resistance.    He asked her whether the crime of rape had been committed upon her by defendant, and she said it had.    He says he supposed she knew at that time what the word "resistance" meant.    She testifies that she did not know the meaning.    It will be observed that there are some matters included in the offer to prove by the grand jury that were not testified to, by the sheriff.    Some of these are as to whether she said her clothes were not torn, and in regard to making complaints. to her mother later, rather than at the time.    These refer to elements in the charge of rape.    It may be true that, in a civil action of this character, plaintiff is not required to make as strong a case as in a criminal charge of rape.    We said in *Verwers v. Carpenter,* 166 Iowa 273, 281, that, in a civil action for damages, the line between seduction and rape is narrow.

    4.    Exceptions are taken to Instruction No. 12, given

by the court, in which the jury was told that evidence of the extent of the acquaintance between defendant and plaintiff, and evidence of acts of familiarity on the part of defendant towards plaintiff before the alleged sexual intercourse, "is received and admitted in evidence to prove

**3. TRIAL: instructions: stating weight of testimony.**

the disposition of defendant herein toward the plaintiff, and as tending, if true, to render it probable that the said act of sexual intercourse was committed by defendant as charged in plaintiff's petition, and for no other purpose." In this connection, another error is assigned: that the court erred in admitting testimony showing acts of familiarity. This was proper, as bearing on the disposition of defendant and his intent in doing the act complained of, if he did it.

*State v. Vance,* 119 Iowa 685, and like cases, cited by appellant, are not in point. The complaint of the instruction is in regard to the use of the word "probable." We think the exception must be sustained. The jury may well have understood that the court intended to say that, because defendant had been guilty of familiarities, on the whole case it was probable that the act of sexual intercourse was committed by defendant, as charged. It is doubtless true that a man who has taken liberties with a woman's person, and who has the disposition or desire to have intercourse with her, would be more likely to do so,—that is, it would be more probable,—than one not having such disposition. The acts of familiarity indicate such a disposition. But we think it is not proper to say to the jury, in an instruction, that it is probable that the act was committed. Appellee cites *State v. Carpenter,* 124 Iowa 5; *State v. Trusty,* 122 Iowa 82, 85. The instruction in the *Carpenter* case was quite different. In the *Trusty* case, it is said in the opinion that acts of indecent familiarity have a tendency to show a breaking down of all safeguards of self-respect and modesty, and a general preparation for the offense, and that they are ad-

missible, as tending to show an antecedent probability. In the discussion in an opinion, quite often things are said which would not be proper to put in an instruction to a jury. The language in the instruction is broader than the language just referred to. The use of the word "probable" in instructions has been before the court in different cases. Some of them hold that, "when we say a fact is probable, we mean that we have more evidence in support of it than to the contrary. This is the meaning of the word in its common use." *State v. Jones,* 64 Iowa 349, 361. In *State v. Trout,* 74 Iowa 545, the court used this language:

"In legal effect, if a claim is made probable by the evidence, it is for the reason that the preponderance of the evidence is in favor of the claim."

In that case, the defendant requested an instruction to the effect that, if the jury believed that, at the time of the shooting, it was probable that defendant was insane, then the presumption of insanity was overcome. This instruction was refused. In *State v. Thiele,* 119 Iowa 659, 662, we said:

"By saying insanity is probable is meant, as understood in common parlance and from the definition of lexicographers, that there is more evidence of insanity than against it, or better reason to believe the defendant insane than to suppose him sane."

See, also, *Bailey v. City of Centerville,* 108 Iowa 20, 28. According to Webster, the word "probable" means, "Having more evidence for than against," etc. We think the natural effect of this instruction was to say to the jury that. if the jury found the acts of familiarity to be true, then there was more evidence for than against the claim that the said act of sexual intercourse was committed by defendant, as charged.

5. In Instruction No. 10, the court instructed the jury, in substance, that the testimony of the party injured is suf-

ficient, if believed to be true, to establish the commission of the act of sexual intercourse complained of, in an action for damages therefor, and the facts and circumstances under which it was committed. This language was used in the instruction wherein the court stated to the jury that the burden was upon the plaintiff to establish the act of sexual intercourse. In Instruction No. 19, the jurors were told that it is not essential that plaintiff should be corroborated by the testimony of other witnesses as to the particular acts constituting the offense charged in the petition, etc. The complaint of these is that the court unduly emphasized the proposition, by repetition. This may be so, and perhaps it would be better on a retrial to avoid any repetition.

6. Complaint is made of the testimony of plaintiff's mother in regard to the stillborn child in the casket. This has been set out. The argument is that it tended to inflame the jury. The matter was not gone into at any considerable length, but we are unable to see that it was necessary. It should be avoided on retrial.

7. It is assigned as error that the court should not have permitted one of the medical witnesses to testify as to what caused plaintiff's trouble, rather than what might or could have produced such result. But the testimony of this witness in chief went in without objection, and matters were gone into by defendant on cross-examination. The question objected to was on re-examination. We shall not set out the evidence, but we think there was no error. As to the other medical witness, the record shows that the court sustained defendant's objection, and other parts of his testimony complained of were stricken out.

8. It is thought that the court erred in allowing plaintiff's mother to testify as to the particulars and details of what she told her mother after the alleged assault, and the

same evening, rather than that she made

**4. RAPE: complaint: permissible details.** complaint, together with the nature of the act and the identity of the defendant. All that was permitted was that plaintiff said Petersen had sexual intercourse with her. This is all that was said. We think this was not giving the details. It would be difficult to make complaint and state what was done and who did it in any other way than as stated by the witness. The party to whom complaint is made may testify as to the fact of such complaint and as to what the injured party complained of, as that the person accused ravished or had intercourse with her. *State v. Watson*, 81 Iowa 380; *State v. Mitchell*, 68 Iowa 116. See, also, *State v. Powers*, 181 Iowa 452, 462; *State v. Barkley*, 129 Iowa 484, 486, cited by appellant, to the same effect.

Appellant has assigned sixteen errors, the more important of which we have discussed. The opinion is already too long, and we shall not take the space to notice the others. They are such as are not likely to occur on a retrial.

For the errors pointed out, the cause is—*Reversed and remanded.*

LADD, C. J., EVANS and SALINGER, JJ., concur.

SALINGER, J., is of opinion that, on the authority of *Williams v. Budgett*, 186 Iowa 196, there should be a reversal on the further ground that the verdict is utterly against the weight of the credible evidence.