## STATE OF IOWA v. HARRY HECTOR, Appellant.

**Criminal law:** SEDUCTION: EVIDENCE: CROSS-EXAMINATION. Where a prosecutrix for seduction testified on direct examination that she had kept company with defendant and had gone with one certain other party, but could think of no others, her cross-examination as to her going with other named young men was proper.

**Same:** IMPEACHING EVIDENCE: PRIVILEGED COMMUNICATIONS. Where a prosecutrix for seduction, in explanation of the reason why she had not stated to the grand jury certain matters testified to on the trial, said that she was not interrogated with respect to such matters, the defendant should have been permitted to show by the county attorney, who was before the grand jury in that capacity, questioned the witness and acted as clerk in taking down the minutes of her evidence, that she was in fact questioned regarding such matters and testified differently than she had upon the trial; as the evidence of the county attorney was not within the privilege of the statute.

**Same:** NEW TRIAL: MISCONDUCT IN ARGUMENT. Even an indirect reference by counsel for the state that defendant, in a criminal case, did not take the stand in his own behalf, is a violation of the statute and should not be made.

**Same:** INSTRUCTION: SEDUCTIVE ARTS. On this prosecution for seduction the instruction with reference to the extent of the seductive arts and deception practiced upon prosecutrix, which will warrant conviction, was supported by the facts and was a proper statement of the law.

*Appeal from Pottawattamie District Court.*—HON. E. B. WOODRUFF, Judge.

TUESDAY, DECEMBER 10, 1912.

DEFENDANT was indicted, tried, and convicted of the crime of seduction and appeals.—*Reversed.*

*A. L. Preston* and *John P. Organ,* for appellant.

*George Cosson,* Attorney General and *John Fletcher,* Assistant Attorney General, for the State.

DEEMER, J.—At the time the crime is said to have been committed, Minnie Peterson, the prosecutrix, was about sixteen and one-half years of age, and defendant was just past eighteen. Each lived at the home of his parents in the town of Walnut in Pottawattamie county, Iowa, and within a short distance of each other. Prosecutrix came into town with her parents in the year 1905, and during the fall of that year she first met the defendant. The seduction is said to have occurred in June of the year 1906. At that time defendant was attending the public schools; but prosecutrix had ceased going to school and was living at home. She met the defendant, so she says, about three times in the year 1905 and the same number of times during the year 1906 before the seduction was actually accomplished. She says that this occurred on the 8th or 9th day of June, 1906, and was the result of defendant's making love to her, hugging and kissing her, and stating that it was all right to have sexual intercourse, that other girls did, that no harm would come of it, and that if there did he would marry her. She also testified that as the result of the intercourse a child was born to her on February 26, 1907.

I. On direct examination prosecutrix gave the following testimony: "Q. He was your beau? (Objected to as incompetent and asking for the conclusion of the witness. Overruled. Defendant excepts.) A. Yes, sir. Q. And you never had any other young man about you or with you, did you, before or up to that time A. Yes, sir; I had been with Mr. Walters before, I remember. Q. And any others A. No, sir; not that I can think of. Q. Was there any other young man with you so frequently as this young man, the defendant here? (Objected

1. CRIMINAL LAW: seduction: evidence: cross-examination.

to. Not answered.) Q. What I want to know is whether or not this young man, the defendant here, was your—was the fellow that was with you, as you folks tell it, whether he was your fellow? (Objected to as incompetent, leading, suggestive, and asking for an opinion and conclusion of the witness. Overruled. Defendant excepts.) Yes, sir; I loved him better than anybody else." On cross-examination the witness was asked as to her going with other young men, naming them, before June of the year 1906; but objections to the questions because not cross-examination and immaterial were sustained. In this there was manifest error. The matter was clearly cross-examination and the testimony material

We extract the following from the record in order that another proposition relied upon by appellant may be understood:

Exhibit 1 is the statement I signed about this matter in the grand jury room, when it was under investigation. At that time, I didn't say that the defendant said to me that he

2. SAME: impeaching evidence: privileged communications.

would marry me in the event that I became pregnant, or that he would take care of me in the event that I got into trouble in that way, or anything of that kind, because they didn't ask me. I think it was Mr. Hess who was asking the questions in the grand jury room. He didn't ask me there if Harry Hector had at any time promised to marry me or anything of that kind. And I didn't reply, 'No, it was never mentioned.' I don't think he ever asked me that. Before I went to the grand jury room, I saw Mr. Hess at Walnut and talked with him quite a while. Q. Didn't he also at that time ask you if Harry Hector hadn't promised to marry you during some of these times? Or something of that kind? Didn't he ask that repeatedly, and didn't you say that there was nothing of that kind occurred? (Objected to as not proper cross-examination, incompetent, immaterial, and privileged.) Court: You are referring to the grand jury? Defendant's Counsel: I am referring to a time prior to the session of the grand jury; not in the grand jury room, but at her home in Walnut. It is admitted by defend-

ant's counsel that Mr. Hess at the time was county attorney of Pottawattamie county. (The objection was sustained upon the grounds that it was privileged communication, to which ruling the defendant excepted.) Q. At the time Mr. Hess was talking with you (referring to the conversation at Walnut), is it not a fact that it was not with reference to any prosecution of a criminal case against the defendant, but with reference to another feature of the case? (Objected to as not cross-examination, immaterial, incompetent, and a privileged communication. Sustained. Defendant excepts.) Q. Is it not a fact that, subsequent to the indictment in this case, Mr. Hess, the county attorney, talked with you about this particular case, and about this particular feature of the case, as to what deception or art was practiced upon you at the time of the alleged seduction, and at that time didn't you say to him, in substance, that the only thing he did or said was to make love to you, and to make other statements to you, but that he said nothing about marriage or about protecting you in that way, and that was not the subject of your talk with Harry Hector at any of the times when you were in his company? (Same objection as to the previous question. Sustained. Defendant excepts.) A. I was in the grand jury room only once while the matter was under investigation. I talked with Mr. Turner and Mr. Cullison this week about my testimony, at Mr. Turner's office. I think my father was there. Q. In the conversation with reference to what your testimony in the case would be, wasn't your attention called to the fact that in your testimony before the grand jury you had made no reference to any promise of marriage or the like? (Objected to as incompetent, immaterial, irrelevant, not cross-examination, and privileged. Sustained. Defendant excepts.) Q. And at that conversation, wasn't it suggested to you that that must have been said to you, or that something of that kind was necessary in the case? (Same objection as to the previous question. Sustained. Defendant excepts.) Q. You said that when you were before the grand jury that the reason that you didn't say anything about the promise of marriage or the like was because it was not asked of you. Now I want to know who first asked you that question? (Same objection as to the previous question. Sustained. Defendant excepts.) A. The only persons I talked with concerning my testimony in this case

is Mr. Cullison, Mr. Turner, Mr. Hess, and Mr. Jones of Des Moines; the last named being a lawyer at that place.

The various rulings here shown are assigned as error. That the entire matter may be fully understood, it should also be stated that the then county attorney, Hess, was called as a witness for the defendant, and this extract from the record discloses what happened: ''I was in attendance upon the grand jury here in Avoca at the April or May term, 1907, when the matter of the charge against Harry Hector in this case was being presented to the grand jury. I think it was in May, and I was in attendance upon the grand jury at that time. Exhibit A is the indictment in this case, and the writing thereon and the minutes of testimony, excepting the signatures, and the writing on the back of the indictment, are in my handwriting. At that time I acted as clerk of the grand jury in so far as I made the memoranda of the testimony of the witnesses which was afterwards attached to the indictment. I remember the prosecuting witness being before the grand jury at that time. Q. I will ask you to state whether or not the prosecuting witness was asked at that time and place anything with reference to the question whether or not the defendant, Harry Hector, had made any promise of marriage to her in connection with her other testimony in which she said that he had sexual intercourse with her. (Objected to as incompetent, immaterial, and privileged.) ''

In connection with this same matter and on this objection, the witness further testified that the grand jury was at the time receiving evidence in this case and in other cases from different witnesses.

The grand jury was in session and duly organized, and I was propounding most of the questions, and occasionally a grand juror might ask one, but I was propounding practically all of the questions. (In connection with this same matter, and the objection urged thereto, the following question was put:) Q. Now at this time, and while the grand jury was so

organized, were there any questions asked by you of the prosecuting witness, Minnie Peterson, as to whether or not, at the time she claims she had been seduced by Harry Hector, that prior thereto, whether or not there had been any promise of marriage by him to her in connection with the seduction?

To this the same objection was urged by the counsel **for** the state as to the previous question, and by permission of the court, on his examination, testified that he was before the grand jury at that time as the county attorney. The court thereupon sustained the objections made to the previous questions upon the grounds that the prohibition of the statute, section 4608, applied to the county attorney, and the same was privileged, and thereupon defendant excepted to the ruling of the court.

Q. What, if anything, did Miss Peterson say at that hearing before the grand jury with reference to the question or fact as to whether Harry Hector had made her any promise of marriage, or promise to protect her in the event anything should go wrong or anything of that kind? (Objected to as immaterial, incompetent, and privileged. Sustained, and defendant excepts.)  Q. At that hearing did you ask her any questions as to whether Harry Hector had promised to marry her or promised to take care of her or protect her in the event anything should happen to her, or any questions of that character? I refer to such time as the grand jury was in session receiving testimony upon this charge against Harry Hector. (Objected to for the same reasons as stated in the previous objection. Sustained on the grounds of privilege, and defendant excepts.)  Q. Did you, at that hearing, and while the grand jury was in session, ask the prosecuting witness, Minnie Peterson, any questions as to whether Harry Hector had made her any promise of marriage or promises of any kind in connection with the charge of seduction? (Objected to for the same reason assigned in the objection to the previous question. Sustained, and defendant excepts.)  Q. Did she at that time, when the grand jury was in session investigating the matter, give any testimony before the grand jury that Harry Hector made her any promises of marriage or promises to protect her, or take care of her in the event she should become in the family way,

in connection with her testimony that defendant had sexual intercourse with her and seduced her? (Objected to for the same reasons stated in the objections to the previous question. Sustained. Defendant excepts.) Q. I want to ask you whether in this investigation before the grand jury of the charge against Harry Hector, while you were acting as clerk or scribe in taking down the testimony, whether you included in her statement that was signed by her in these minutes, all that she related before the grand jury that Mr. Hector said to her in connection with the charge of seduction as an inducement for her to submit her person to him? (Objected to as incompetent, immaterial, and privileged. Sustained, and defendant excepts.) In connection with the foregoing questions and before ruling thereon, defendant's counsel stated that they expected to show by the witness Hess that the prosecutrix, Minnie Peterson, when examined before the grand jury, and during the giving of her testimony with reference to the offense charged against the defendant, had been asked by Mr. Hess, who was conducting the examination, on several occasions during that examination, whether the defendant had ever promised to marry her, prior to the alleged seduction, and that she replied to such questions that the defendant had never made any promises of marriage to her or any other promises, and that such marriage had never been mentioned or discussed by herself and the defendant.

Defendant also introduced the minutes of the prosecuting witness' testimony attached to the indictment, reading as follows: "Am seventeen years old. Was seventeen on January 28th, this year. Got acquainted with defendant in the fall of 1905. I went out with him a number of times to different places. He said he loved me, and that I was his sweetheart, and that I was the only girl he loved, and always made love to me. I believed him, and he had intercourse with me a number of times. Minnie Peterson."

In the rulings complained of we think there was error prejudicial to the defendant. The prosecutrix first attempted to explain the minutes of her testimony taken before the grand jury by a statement which was not objected to, that

none of the persons examining her had asked about any promise of marriage, and especially to the fact that the county attorney did not ask her any such question. In view of this record it seems to us that it was entirely proper for the defendant to call the county attorney to disprove this statement. In *State v. McPherson*, 114 Iowa, 492, this matter was discussed, and it was held to be within the discretion of the trial court to permit the clerk of the grand jury to testify as to what a witness had testified to before the grand jury. And in *State v. Swafford*, 98 Iowa, 370, it is held in effect that matter called for as in this case was not privileged because made in response to questions by the county attorney in the performance of his duty. Again, in *Foreman v. Archer*, 130 Iowa, 49, it was held that, when a client gave testimony as to what he said to his attorney, the attorney may be permitted to testify as to the same subject-matter. See, also, *Kelly v. Cummens*, 143 Iowa, 148. It is true that in *Gabriel v. McMullin*, 127 Iowa, 426, and *State v. Houseworth*, 91 Iowa, 740, we held that communications made by a prosecutor to the county attorney not in the grand jury room were privileged under section 4608 of the Code, or by reason of public policy; but this holding does not dispose of the question now before us. Here the proceedings were before the grand jury and in the presence of the county attorney, who also acted as the clerk of that grand jury, and prosecutrix had already opened up the subject by attempting to explain why she did not testify before the grand jury as she did upon the trial of the case. Assuming that the matter was within the discretion of the court, we think it was so vital to the case that the county attorney should have been allowed to testify.

II. In arguing the case to the jury counsel for the state indulged in the following remarks: "Walnut is close here, and yet they have not, and I must say it must be inferred that

3. SAME: new trial: misconduct in argument.

was the case. They could not in that city find one witness that would testify that this prosecutrix's character, chastity, or reputation for chastity was not, prior to the time of her seduction, was what

these two important witnesses (Clark and Linebach) testified
to. Defendant's Counsel: We object to this line of argument.
It would not be at all competent for us to show want of
chastity by such methods as counsel points out. It is
prejudicial and misconduct on the part of counsel. . . .
With these falsehoods they made an assault upon the young
girl's chastity. They have not disputed her stories. What
she said to you about her dealings with the defendant are
undisputed. Defendant's Counsel: We take exception to that
remark. Mr. Cullison: They have not chosen to dispute it.
Defendant's Counsel: We take exception to that remark. Mr.
Cullison: It stands unchallenged. Defendant's Counsel:
We take exception to that remark.''

The first of these remarks should not have been made.
*State v. Williams,* 122 Iowa, 115; *State v. Hogan,* 115 Iowa,
455; also, *People v. Aiken,* 66 Mich. 460, (33 N. W. 821, 11
Am. St. Rep. 512). While something like the remarks last
quoted have been held' not in violation of section 5484 of the
Code in *State v. Seely,* 92 Iowa, 490; *State v. Snider,*
119 Iowa, 15, and *State v. Hasty,* 121 Iowa, 507, and other
like cases, yet they fall dangerously close to the rules an-
nounced in *State v. Trauger,* (Iowa) 77 N. W. Rep. 336; *State
v. Baldoser,* 88 Iowa, 55; *State v. Graham,* 62 Iowa, 108, and
*State v. Ryan,* 70 Iowa, 154. And while we shall not reverse
here because of them, we deem it advisable to caution counsel
and all county attorneys and assistant prosecutors against
making reference either directly or indirectly to de-
fendant's failure to take the witness stand or to deny the
alleged seduction. Here the defendant did not take the stand,
and under our practice this was his privilege; and the statute
expressly says that no reference shall be made to the fact
that he did not testify. Such reference may be made indi-
rectly with as much, if not more, force than if directly charged,
and it is quite important that the statute be observed so long
as it remains upon the books. Whether or not it should be
repealed in the interest of justice is not now before us. Dur-

ing the trial of the case counsel for the state were guilty of many improprieties which should not be repeated if the case is retried.

III.   The corroborating testimony is weak, but we think there was enough to take the case to the jury.   *State v. Mull- holland,* 115 Iowa, 172; *State v. Smith,* 84 Iowa, 522; *State v. Coffman,* 112 Iowa, 8; *State v. Curran,* 51 Iowa, 112.

IV.   Instruction 10, given by the trial court, reads as follows:

It must be shown by the state beyond a reasonable doubt that, at the time of the first indulgence of sexual intercourse between the defendant and prosecuting witness, the defendant induced her to have such sexual in-

4. SAME: instruc-
tion: seductive
arts.

tercourse with him as the result of some se- ductive arts, deception, or promise of mar- riage or promise, if anything came of it, he would take care of her, made and used by the defendant for the purpose of overcoming her virtue, and which was calculated to and did overcome her will and induced her to surrender her person to him, and but for such seductive means and influence she would have maintained her virtue.   The exact amount of se- ductive means and influence necessary to make out this ele- ment of the offense cannot be definitely defined and explained. They depend upon the circumstances of each case.   The se- ductive means and influence which would induce one woman to surrender her person might not have that influence upon another woman; but the seductive means and influence, how- ever, must have been of such character and force as that by reason thereof the said prosecuting witness in this case was led to submit to the intercourse with defendant, and but for such seductive means and influences and promises practiced by the defendant, if any there were, she would have main- tained her virtue.   On this point it will be proper for you to consider, so far as disclosed by the evidence, the age, educa- tion, mental qualities, experience, and strength of mind of the prosecuting witness and of the defendant; their acquaint-

ance, its duration, and intimacy prior to the time of the alleged seduction; their conduct and relations toward each other; what, if any, acts or words of love and affection or flattery and attention the defendant had used towards her prior to the time of the alleged seduction; what, if any, sentiments or feeling of love and affection she at that time bore towards the defendant; what, if anything, he had said or done to kindle the same; and what, if any, control or influence he had over her by reason thereof; what, if any, representations, statements, declarations, promises, or appeals 'the defendant made, used, or employed prior to or at the time of the alleged seduction which were, if at all, calculated to mislead, influence or deceive the prosecuting witness and cause her through interest, trust in, or love for the defendant, to yield to his desires. And from these matters, if shown by the evidence, and from all the evidence before you, it is for you to say whether this prosecuting witness, Minnie Peterson, was led astray and influenced to yield her person to the defendant by means of some representations, declarations, promise of marriage, or artifice hereinbefore explained.''

This is complained of. It has ample support in the testimony and is a correct statement of the law. See *State v. Price,* 157 Iowa, ——, decided at present term.

Other instructions complained of are apparently correct, and there was no error in denying defendant's requests.

For the errors pointed out, the judgment must be and it is *Reversed.*