STATE OF IOWA, Appellee, v. FRANK ROLLING, Appellant.

**SEDUCTION:** Limitation of Actions—Jury Question. On the issue
1 whether the State had established the offense within the statute of limitation, the jury's finding on conflicting evidence is final.

**SEDUCTION:** Seductive Arts—Sufficiency. Arts, promises, and de-
2 ceptions sufficient to satisfy the law relative to seduction may be

found from evidence of long-continued association of the parties as lovers, promises of marriage, and promises of earlier marriage in case prosecutrix became pregnant.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 15, 1921.

The defendant was convicted of the crime of seduction, and appeals.—*Affirmed.*

*J. T. Keenan* and *Nelson Miller,* for appellant.

*H. M. Havner,* Attorney General, and *F. C. Davidson,* Special Counsel, for appellee.

FAVILLE, J.—I. The indictment in this case was returned by the grand jury of Plymouth County on March 27, 1919,

1. SEDUCTION: limitation of actions: jury question.

charging the defendant with having committed the crime of seduction on or about October 1, 1917. The cause was tried in September, 1919.

One of appellant's main contentions is that the State failed to establish the fact that the alleged seduction was committed within 18 months before the indictment was returned. The prosecuting witness and the defendant had lived in the same vicinity for many years, and had been acquainted since childhood. The prosecuting witness was the adopted daughter of a widower. She was about 20 years of age. Defendant is the son of a farmer, and about 18 years old.

According to prosecutrix, the parties began "keeping company" with each other in August, 1916. This continued thereafter, with frequent visits on the part of defendant, until June, 1917, when, according to the story of prosecutrix, the parties became engaged to be married. She testified that thereafter defendant frequently solicited her to yield to his desires, and that finally, in October, 1917, the claimed seduction took place.

The prosecutrix testifies that, after that time, the parties frequently indulged in sexual intercourse at different times during a period of about eight months. She became pregnant in

April, 1918, and informed the defendant of her condition in May, 1918, and he ceased going with her in June, 1918. A child was born to prosecutrix on January 3, 1919.

On cross-examination, the prosecutrix explained the manner in which she fixed the date of the alleged seduction by stating that she discovered that she was pregnant on or about her menstrual period, May 5, 1918, and that she then figured back that the first act of intercourse was in October, 1917. She says it was about eight months from the time of the first act until she realized that she was pregnant.

The defendant admitted that he had indulged in repeated acts of sexual intercourse with prosecutrix. He says, however, that the first act of intercourse was in August, 1916, instead of October, 1917, as stated by prosecutrix. The parties agree as to the circumstances attending the first transaction, but differ as to the date thereof. Defendant testifies that the relationship between them continued from August, 1916, until June, 1917, when he says it was broken off and was discontinued until September of that year, and was then resumed. He says that he called on prosecutrix right along after that, and that their relations continued until June, 1918, but that he did not have sexual intercourse with prosecutrix after February, 1918.

There was a direct conflict between the testimony of the prosecutrix and that of the defendant as to whether the first act of intercourse occurred in October, 1917, or in August, 1916. If it was in August, 1916, as claimed by defendant, the prosecution therefor was barred by the statute of limitations. It was for the jury to determine which one spoke the truth in this matter.

Evidence was offered by the State to corroborate the prosecutrix as to the fact that the defendant was "keeping company" with the prosecutrix and that the parties acted toward each other as lovers in 1917 and 1918. None of the State's witnesses, however, definitely fix this relationship as early as August, 1916, the date fixed by the defendant as the time of the first act of intercourse.

The defendant's sister, testifying in his behalf, says that defendant began going with prosecutrix in 1916, but does not attempt to fix the date. But defendant's main contention in

this regard is respecting the prosecutrix's testimony about a ring given her by defendant. On her first examination, she testified that she received a ring from defendant, and that she returned it to him in June, *1918*. She also testified, on cross-examination, that there was no act of intercourse *after* the return of the ring. The defendant offered testimony to the effect that the ring was returned in 1917, instead of 1918. Thereupon, the State recalled the prosecutrix, who then testified that she was mistaken in the matter, and that the ring was, in fact, returned in 1917.

Much is made in argument of the proposition that the prosecutrix changed her testimony as to the date of the return of the ring, but did not change her former testimony as to there being no intercourse after the ring was returned. No opportunity was given the prosecutrix to explain this inconsistency in her testimony. Neither side interrogated her on this subject when she was recalled. The question of the apparent discrepancy in her testimony was essentially one for the consideration of the jury. It is conceded that she was in error about the date that the ring was returned. It is also perfectly apparent that she was in error in saying that there was no act of sexual intercourse "*after* the ring was returned," as both parties testify that there were repeated acts of intercourse thereafter. She said there was no act of intercourse after April, 1918, and then said that she returned the ring at that time. Both parties agree that she was correct that there was no such act after April, 1918, and both agree that the illicit relations did continue at least until February, 1918.

It would have been better if counsel for either the State or the defendant had interrogated the witness, when recalled, regarding this matter, and cleared it up. It is not altogether impossible that the failure of the State to have the witness explain this matter when recalled might have been turned by able counsel in argument, quite as much to defendant's advantage as though the witness had explained her former testimony.

We have carefully read the record regarding this testimony, and are satisfied that the whole situation was fairly before the jury, and it was for it to determine the credibility of the witness. It is not to be overlooked that the situation was a partic-

ularly trying one for a young woman of limited education and experience. The ordeal of confessing her own sin in a public place, before the curious crowd that delight to attend such trials, under a rigid cross-examination, is one that does not tend to produce clearness of thought or the most perfect accuracy of recollection. The answers of the witness in this case were mostly given in monosyllables. There is no such condition as requires us to say that the verdict is without·support in the evidence at this point, or that the jury was not justified, upon the whole case, in finding the defendant guilty, by that degree of proof required to justify a conviction in a criminal case. The court covered the matter by a proper instruction. It was essentially a jury question. We do not find any error of law in respect to this matter, nor any situation respecting the evidence that would justify interference by this court.

II. ·It is insisted in behalf of defendant that there is no evidence that the defendant used such arts, deception, or practices of any kind as make the act seduction. Under the evidence of the State, the jury would have been

2. SEDUCTION:
   seductive arts:
   sufficiency.

warranted in finding that the prosecutrix and defendant began "keeping company" together in August, 1916, and, with the possible exception of three months, continued until after she was known to be pregnant, in 1918. She says that he came to see her about every Sunday, and sometimes twice a week. They went to shows and dances. She says he told her that he loved her; that he cared for her; that she would make a good housekeeper for him. She testifies that he asked her to marry him, and that she consented. She says that he put his arm around her and kissed her, and that they acted as lovers do, and that such conduct was frequent and usual. There is some evidence that preparations were made for the contemplated wedding. She says the defendant told her they would have been married in the winter of 1917, but were so young that they would wait a year. Defendant gave prosecutrix a ring and a toilet set. There was testimony by other witnesses tending to corroborate the prosecutrix as to these matters generally, especially regarding the frequency with which the parties were together at dances and other places. Defendant admits that he called on prosecutrix every Sunday during the

time they were keeping company, and sometimes during the week; that he took her riding, took her to dances and shows, and gave her candy. He says that he treated her kindly and affectionately; that he kissed her and told her he loved her; and that this was continuous from September, 1917, to February, 1918. He denies that they were engaged to be married, but says that they talked of marriage in October, 1917, which is the approximate time fixed by the prosecutrix as the date of the alleged seduction. He says that, at this talk, he did not say whether he would or would not marry prosecutrix, and says he never had any intention of marrying her.

The particular point pressed by appellant is that the evidence of the prosecutrix shows that no seductive arts were used to obtain her consent to the illicit act, and that the evidence shows no more than a conditional promise of marriage. Much stress is laid upon the fact that prosecutrix testified that she yielded to defendant's importunities because he promised to marry her if anything happened to her. It is urged that this is not sufficient to support a conviction of seduction. We have much more than this declaration in the instant case, however. If prosecutrix is to be believed, the prosecutrix and defendant had been engaged to be married for many months, before she yielded to his repeated solicitations that she submit to his desires. All this time, defendant treated her as a suitor, was with her frequently, took her to public places, embraced and kissed her, told her that he loved her, and gave her presents. Furthermore, she insists that, at the time of the alleged seduction, the defendant promised her that he would marry her sooner than they had planned, if anything happened to her. In answer to a specific question, she says that the reason she consented to intercourse with defendant was "because we were engaged to get married, and I thought, the way he acted, that he loved me; and he said if anything would happen to me he would marry me sooner than we intended to get married."

We think the evidence in this case brings it clearly within the rule heretofore pronounced by this court. In the early case of *State v. Higdon*, 32 Iowa 262, this court declared:

"The exact amount, or what kind of seductive arts is necessary to establish the offense charged, cannot be defined.

Every case must depend upon its own peculiar circumstances, together with the condition in life, advantages, age, and intelligence of the parties.''

In that case, the defendant had visited the prosecutrix about once in two weeks during a period of a year; and after these attentions had continued about four months, he proposed illicit commerce, stating ''that it was no harm, and that nearly everybody did that way.'' The conviction was sustained.

In *State v. Knutson*, 91 Iowa 549, we said:

''It is said that the promise of the defendant, which caused her to yield to him the last time, was conditional, and wholly insufficient to induce a chaste woman to submit to sexual intercourse. It appears that several promises were made, and their effect upon the prosecutrix was for the jury to determine.''

In *State v. Hemm*, 82 Iowa 609, 617, it is said:

''By the act of intercourse in this case, the prosecutrix became a mother, and his representations were false. If she yielded because of his representations, it was a case of deception or fraud, for he was the means of her public exposure. His representations were no less than a promise that it would not be·known, which he rendered false.''

In *State v. Prizer*, 49 Iowa 531, we held:

''A promise made with an intention at the time to break it may be called *false*. If defendant's promise was not false in that sense, he would, nevertheless, be guilty if he subsequently broke his promise.''

In *State v. Hughes*, 106 Iowa 125, the defendant had waited upon the prosecutrix, had taken her to various places, had hugged and kissed her, had told her she was pretty and sweet, and had taken some liberties with her person. We said:

''The evidence tends to show that the prosecutrix submitted to the embraces of the defendant, if at all, by reason of his promises that he would not get her in a family way, and that, if he did, he would marry her. While the statement, if made, was not direct, it was meant to be so understood by her, and she so accepted it. His assurances that no harm would be done evidently related to physical injury, and were not representations as to the character of the act. But it cannot be said

that she relied upon these promises entirely freed from the flattery and arts he had been previously and was then practicing."

In *State v. Hamann,* 109 Iowa 646, we said:

"That seduction consists in inducing, by any kind of deception, an unmarried woman of chaste character to part with her virtue and yield to the embraces of the deceiver."

On the precise question urged by appellant in this case, we said, in *State v. Price,* 157 Iowa 412:

"The mere fact that the promise to marry her if anything happened was the final argument which persuaded prosecutrix to yield did not eliminate from consideration the other influences which may have operated to overcome her scruples."

We also said:

"If, then, by his protestations of love or other deception or other artifices, in connection with a conditional agreement to marry, or without this, the accused persuaded the prosecutrix to yield to his embraces, when, but for such protestations or deception or other artifices, she would not have done so, this was sufficient to sustain a finding of guilt, regardless of whether some of these or the conditional promise was what finally determined the issue."

In *State v. Criswell,* 148 Iowa 254, we said:

"The fact that the prosecutrix testified on cross-examination that the promise of marriage was the sole cause of her fall would not preclude the jury from giving consideration to her testimony as a whole, which discloses protests of love and other acts not inconsistent with a marriage engagement."

As bearing on the same question, see, also, *State v. McIntire,* 89 Iowa 139, and *State v. Hector,* 158 Iowa 664.

The case comes squarely within the rule recognized by this court. The jury was fully warranted, under the evidence, in finding such arts and promises on the part of the defendant as fully satisfied the requirements of the law in actions of this kind. Other matters of minor importance involving rulings on evidence are without merit.

We have examined the record in this case with the care required by the importance of the case and the effect of our decision upon the defendant. The instructions of the court are not challenged. We find no error of law committed in the trial.

The questions of fact were for the jury, and the evidence was sufficient to sustain the verdict returned. It therefore follows that the judgment of the lower court must be, and it is,— *Affirmed*.

EVANS, C. J., WEAVER and ARTHUR, JJ., concur.